**Marcos Emilio REYES, Libelant,**

v.

**The MOTOR VESSEL VENUS II, her engines, tackle, furniture, appliances, appurtenances, etc., and Nieves Hermanos, Respondent.**

**No. 5-66.**

United States District Court
D. Puerto Rico.

Sept. 2, 1966.

Gustavo A. Gelpí, of Nachman, Feldstein, Lafitte & Smith, San Juan, P. R, for libelant.

J. T. Peñagarícano, San Juan, P. R., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND DECREE

CANCIO, District Judge.

This case was called for trial on June 16, 1966 and hearings were held on that day and on June 21, 23 and 24, on which date trial came to an end. The case was taken under advisement and parties were granted fifteen days to file simultaneous memoranda if they wished. They have done so. Now, the Court, being fully advised in the premises, arrives at the following findings of fact and conclusions of law. Before that, though, a brief introduction seems necessary.

Libelant alleges in his libel that on January 6, 1966, he was injured when he fell from a jacob's ladder while attempting to board the Venus II, which, on that date, was berthed in Puerto Cortés, Republic of Honduras. He alleged that there was grease on the jacob's ladder. He further alleged that he fell between the vessel and the pier, striking his ankle on the pier as he fell.

In his own testimony, libelant seeks to change the theory of his case and the facts he himself alleged in his libel. He states that the jacob's ladder slipped

from its ties on one side and that he was unable to grasp the railing because there was grease on it, and his hand slipped as he tried to grasp it. He clearly testified that there was no grease on the ladder. Internally, libelant's testimony is also inconsistent in many aspects.

It is clear that neither libelant's testimony is the absolute truth, nor is that of respondent's witnesses. Yet it is from this testimony that we must make our findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On January 6, 1966, libelant, Marcos Emilio Reyes, was employed aboard the Motor Vessel Venus II as a seaman.

2. As has been admitted by the parties, the Motor Vessel Venus II was and is a vessel registered under the Dominican Flag and, at the time of the occurrence herein, Nieves Hermanos owned, operated, managed, provisioned, manned, supplied, and was in control of this vessel.

3. On or about the 6th day of January 1966, libelant suffered an injury in the port of Puerto Cortés in the Republic of Honduras.

4. On the night of the accident, libelant and some fellow crew-members had gone to a bar at approximately 9:30 P.M. near the place where the vessel lay moored and there had several drinks of alcoholic beverages. After having had some drinks himself, libelant decided to return at about 2:30 A.M. to the vessel which was a very short distance away. He was not so drunk as to require somebody's assistance to get him to the vessel. In fact, he claims he was perfectly sober and even denies having been at the bar.

5. As he was going to the vessel, libelant went for a short distance along the pier.

6. The pier was well lighted.

7. While walking along the pier, libelant got too close to the edge of the pier and his left foot slipped into a separation between the edge and the bumper of the pier. This caused him to fall and to suffer the injuries to his left ankle, for his left foot was still wedged in this space. He did not fall in the water.

8. Libelant's fellow crew-members were notified of the accident and the First Officer on board took reasonably adequate provisions to see that libelant received the treatment required by his injuries, at least as much as it was available at such an hour and in such a place.

9. Libelant has received further treatment and has now reached the maximum point of recovery that can be expected, given the nature of his injury.

10. As a result of his accident, libelant suffered a double fracture of the left ankle. He received treatment in the Republic of Honduras, which treatment consisted in an open reduction and the insertion of metallic fixations. These were later removed in Puerto Rico. There was medical evidence that he suffered some infection of the medial malleolus. He was seen several times by an orthopaedic surgeon in Puerto Rico, who treated him at the request of respondents. Libelant remains with a mild lateral displacement of the distal fragment of the medical malleolus and will probably have some degree of arthritis on this account. It is the opinion of the sole medical witness that the injury is a painful one, that the libelant still has some pain, but that that pain will eventually disappear.

11. Libelant has and will have a permanent disability consisting in a slight limitation of movement in the ankle joint.

12. Respondent has at all times seen to the maintenance and cure of libelant.

13. The proximate cause of the accident was not grease, defects or any other fault on the jacob's ladder or elsewhere in the vessel as alleged in the libel and as stated by libelant, but his own decision to walk alongside the pier in a very dangerous spot.

## CONCLUSIONS OF LAW

1. The vessel Venus II was seaworthy.

2. Respondent was not negligent.

3. Libelant's injuries were caused solely by his own negligence.

4. Respondent was under no obligation to accompany or see to it that libelant was accompanied by someone on his return to the vessel. Assuming that paternalism to that extreme would be necessary as a matter of law, which we do not decide here, libelant was not in such a condition as to require this help.

5. The pier was not in such a condition as to constitute a danger against which the respondent had an obligation to protect libelant. O'Donnell v. Great Lakes Dredge and Dock Co., (1943), 318 U.S. 36, 63 S.Ct. 488, 87 L. Ed. 596; Marceau v. Great Lakes Transit Corp., (2d Cir., 1945), 146 F.2d 416.

6. Although the Master of a vessel must care for his crew much as a parent would for his erring children, he does not have to wet-nurse them. Furthermore, as we have said, libelant's degree of intoxication was not such to prevent him from avoiding the injury he suffered, had he but used some degree of care. Farrell v. United States, (1949), 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Aguilar v. Standard Oil Co. of New Jersey, (1943), 318 U.S. 724, 63 S.Ct. 930, 87 L. Ed. 1107. There is no indication that libelant's lack of care was due to intoxication. It was plain negligence.

7. There is a strong difference between the duty of a ship to maintenance and cure and that of responsibility for unseaworthiness. A ship may have a duty for the former without being responsible for the latter. In this case, there is no doubt that respondent has complied with his duty to maintenance and cure.

## DECREE

In view of the foregoing, it is ordered, adjudged and decreed that respondent be discharged, and the libel be, and hereby is, dismissed on the merits.