[Civ. No. 39487. Second Dist., Div. Four. Aug. 17, 1972.]

ROBERT LEE DIXON, Plaintiff and Appellant, v.
GRACE LINES, INC., Defendant and Respondent.

## COUNSEL

Magana, Cathcart, Marin & Pierry, John A. Marin and William B. Murrish for Plaintiff and Appellant.

Lillick, McHose, Wheat, Adams & Charles and Michael D. Dempsey for Defendant and Respondent.

## OPINION

**DUNN, J.**—This is an appeal by the plaintiff from a summary judgment entered in favor of the defendant in an action, commenced in the California Superior Court, to recover damages under the Jones Act (46 U.S.C.A. § 688) and the general maritime law for personal injuries sustained by plaintiff while he was a seaman in the employ of defendant.

In the complaint, filed July 26, 1968, it was alleged: defendant, Grace Lines, Inc., owned and operated the vessel "S.S. Santa Ines," which transported cargo for hire in interstate and foreign commerce; on April 26, 1968, and for some time prior thereto, plaintiff was a member of the crew of the Santa Ines; on April 26th, while the vessel was in Qui Nhon Harbor, South Vietnam, plaintiff met with an accident, and thereby sustained personal injuries, as a result of defendant's negligence and the unseaworthiness of the vessel. In the first cause of action plaintiff sought general and special damages under the Jones Act (46 U.S.C.A. § 688) on the claim of negligence, and under the general maritime law on the claim of unseaworthiness. In the second cause of action he sought to recover the expenses of his maintenance and cure, plus his earned wages and wages to the end of the voyage, alleging that he was injured while in the service of the vessel.

Defendant filed an answer generally denying the allegations of the complaint. Interrogatories were propounded by each party and answers thereto were filed. Defendant took plaintiff's deposition and plaintiff took the deposition of Donald Lindsay, one of plaintiff's fellow crewmen at the time of his alleged accident.

Thereafter defendant moved for summary judgment (Code Civ. Proc., § 437c). ▮▮▮ In addition to the declaration of defendant's at-

torney, the motion was based upon plaintiff's answers to defendant's interrogatories and upon the two depositions,[1] both of which were on file with the court.

In the two depositions it was testified: in January 1968 plaintiff signed on the Santa Ines as an ordinary seaman; he was so employed when the vessel reached Qui Nhon in April 1968; early on the afternoon of April 26th, plaintiff went ashore on leave; the Santa Ines was then tied up to the pier at Qui Nhon, and no sailing board was posted when plaintiff left the ship; he met Lindsay on the pier and they went into Qui Nhon where they had lunch at a hotel; while they were there, they saw the third assistant engineer from the Santa Ines; he told them the ship was going to go to the outer harbor and that he was leaving to board it before it moved; plaintiff and Lindsay decided to stay ashore a little longer and return to the ship by launch; late in the afternoon they left the hotel and walked to the M.S.T.S. pier (a pier of the "Military Sea Transport Service" maintained by the United States Navy) in order to return to the Santa Ines on an M.S.T.S. launch; the man in charge of the pier told them no more launches would be going out that day; plaintiff and Lindsay then proceeded to a native launch area, which was approximately 2 miles from the M.S.T.S. pier and 2-3 miles from the place where the Santa Ines had been tied up earlier in the afternoon; they had received no instructions from anyone on the vessel as to whether they could or should use private launch facilities in Qui Nhon; it was customary for the officers and crew of the ship to use either M.S.T.S. launches free of charge, or native launches at their own expense; it was sunset when plaintiff and Lindsay reached the native pier, which consisted merely of a rock embankment; at the pier they saw several native boats; Lindsay left to find someone to operate the boats; while he was gone, plaintiff walked onto a plank 15-20 feet long which led from the pier to one of the boats; when he was half way across the plank, it broke behind him; he fell into the water, sustaining personal injuries; when Lindsay returned to the native pier, he heard plaintiff call for help and saw him floating in the water; Lindsay pulled plaintiff out and summoned American military personnel, who took plaintiff to an army hospital in Qui Nhon; the Santa Ines sailed at midnight April 26-27, 1968; plaintiff did not know who owned the pier or the boats, nor did he know where the plank came from or what caused it to break.

The declaration in support of the motion for summary judgment set

---

[1]It is proper to use depositions and answers to interrogatories in support of a motion for summary judgment. (*State Medical Education Bd.* v. *Roberson* (1970) 6 Cal.App.3d 493, 500 [86 Cal.Rptr. 258]; *Estate of Kerner* (1969) 275 Cal.App.2d 785, 789 [80 Cal.Rptr. 289]; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 469 [33 Cal.Rptr. 661]; *Kramer* v. *Barnes* (1963) 212 Cal.App.2d 440, 444 [27 Cal.Rptr. 895].)

forth much of the contents of plaintiff's deposition. It was also stated in the declaration that neither the master, the owner nor the agents of the Santa Ines had "any connection" with the native boat which plaintiff was attempting to board, and that the Santa Ines did not contract with the owner of the boat for transportation of the ship's personnel.

Plaintiff filed three declarations in opposition to the motion. In these he stated: the captain of the Santa Ines refused to contract with the M.S.T.S. authorities for launch service for those granted shore leave in Qui Nhon; instead, he approved the use of native launches for this purpose even though he knew of the unsafe conditions at the native pier; when plaintiff attempted to return to the ship from authorized shore leave on April 26, 1968, a native boat was the only means of transportation available to him; in order to board this boat it was necessary to walk upon a wooden plank; while plaintiff was doing so, the plank broke, causing him to fall into the water and sustain serious personal injuries; following the accident, plaintiff did not receive the maintenance and cure to which he was entitled.

The motion for summary judgment was granted. An order was filed dismissing the action upon the grounds it had no merit and there was no triable issue of fact. Summary judgment was entered in favor of defendant. Plaintiff appeals,[2] contending that under the applicable law there were triable issues of fact as to both unseaworthiness and negligence.

## I. *Seaworthiness*

State courts have concurrent jurisdiction with federal courts to try actions under the maritime law (*Engel* v. *Davenport* (1926) 271 U.S. 33, 37 [70 L.Ed. 813, 817, 46 S.Ct. 410]), but the substantive law to be applied in such actions is federal law. (*Garrett* v. *Moore-McCormack Co.* (1942) 317 U.S. 239, 245 [87 L.Ed. 239, 243, 63 S.Ct. 246]; *Intagliata* v. *Shipowners & Mer. etc. Co.* (1945) 26 Cal.2d 365, 371-372 [159 P.2d 1].)

The doctrine of seaworthiness imposes upon a shipowner the duty to furnish a vessel and appurtenant appliances and equipment reasonably fit for their intended use. (*Gutierrez* v. *Waterman S.S. Corp.* (1963) 373 U.S. 206, 213 [10 L.Ed.2d 297, 303, 83 S.Ct. 1185]; *Mitchell* v. *Trawler*

---

[2] The notice of appeal states that plaintiff appeals from the notice of entry of judgment, the notice of filing order of dismissal, and the minute order granting the motion for summary judgment. None of these is appealable. (Code Civ. Proc., § 904.1.) However, the notice further states, correctly, that the "Judgment was filed on January 5, 1971 and entered on January 13, 1971 in the register of actions, Book SO 146, Page 243." Defendant does not challenge the form of the notice of appeal. Therefore, we treat the appeal as having been properly taken from the summary judgment. (Code Civ. Proc., §§ 437c, 904.1, subd. (a).)

*Racer, Inc.* (1960) 362 U.S. 539, 550 [4 L.Ed.2d 941, 948, 80 S.Ct. 926].) The duty is absolute and nondelegable (*Italia Soc. v. Ore. Stevedoring Co.* (1964) 376 U.S. 315, 323 [11 L.Ed.2d 732, 740, 84 S.Ct. 748]; *Crumady v. The J. H. Fisser* (1959) 358 U.S. 423, 427 [3 L.Ed.2d 413, 416-417, 79 S.Ct. 445]; *Seas Shipping Co. v. Sieracki* (1946) 328 U.S. 85 [90 L.Ed. 1099, 66 S.Ct. 872]); it cannot be "shifted about, limited, or escaped by contracts . . . ." (*Reed v. The Yaka* (1963) 373 U.S. 410, 414 [10 L.Ed.2d 448, 452, 83 S.Ct. 1349].) A seaman injured through breach of this duty may recover from the shipowner, for the general maritime law makes the owner liable for such losses. (*Turcich v. Liberty Corp.* (E.D.Pa. 1954) 119 F.Supp. 7, 11, affd. (3d Cir. 1954) 217 F.2d 495, cert. den. (1956) 350 U.S. 983 [100 L.Ed. 851, 76 S.Ct. 470].)

■ The duty to provide a seaworthy vessel includes furnishing a seaman with reasonably safe ingress and egress to and from the vessel, either through the vessel's own equipment or that of others upon whom the shipowner relies; and this principle applies when the seaman is departing for or returning from shore leave as well as when he is departing or returning in the performance of his duties as a seaman. (*Davis v. Associated Pipe Line Contractors, Inc.* (W.D.La. 1968) 305 F.Supp. 1345, 1352, affd. (5th Cir. 1969) 418 F.2d 920, cert. den. (1970) 397 U.S. 988 [25 L.Ed.2d 396, 90 S.Ct. 1119]; *Trahan v. Superior Oil Co.* (W.D.La. 1962) 204 F.Supp. 627, affd. *sub nom. Superior Oil Co. v. Trahan* (5th Cir. 1963) 322 F.2d 234; *Broussard v. United States* (E.D.Pa. 1956) 1956 A.M.C. 882, 890-891; *Buch v. United States* (S.D.N.Y. 1954) 122 F. Supp. 25, 26, revd. on other grounds (2d Cir. 1955) 220 F.2d 165.) In *Novick v. United States* (E.D.Pa. 1971) 324 F.Supp. 1138, defendant shipowner arranged with a third party to provide a launch to transport crewmen of defendant's vessel ashore and back to the ship. While plaintiff crewman was boarding the launch to return to the vessel from shore leave, he was injured by the negligence of one of the members of the launch crew. It was held that defendant was liable to plaintiff because the acts of the launch crew member rendered defendant's vessel unseaworthy. (See also: *Davis v. Associated Pipe Line Contractors, Inc., supra,* 305 F.Supp. 1345.)

As defendant points out, where a seaman returning from shore leave is injured enroute to the dock area to board his vessel, the shipowner is not liable on the ground the vessel was unseaworthy. (*D'Costa v. United States Lines Co.* (S.D.N.Y. 1964) 227 F.Supp. 180, 181; *Dangovich v. Isthmian Lines, Inc.* (S.D.N.Y. 1963) 218 F.Supp. 235, 236, affd. (2d Cir. 1964) 327 F.2d 355.) However, in the instant case plaintiff already had reached the native dock and was attempting to board a native boat which would

take him back to the vessel. It was then he sustained personal injuries. Therefore, if defendant had arranged with the owner of the boat to transport defendant's crewmen to the Santa Ines, the boat would be an appurtenance of defendant's vessel, and if the boat were unseaworthy the vessel also would be unseaworthy, thus exposing defendant to liability to plaintiff. (See: *McGraw* v. *States Marine Lines* (E.D.Pa. 1971) 324 F.Supp. 118.)

## II. *Jones Act*

■ A Jones Act case also is triable in a state court but, again, federal substantive law applies. (*O'Donnell* v. *Great Lakes Co.* (1943) 318 U.S. 36 [87 L.Ed. 596, 63 S.Ct. 488]; *Barboza* v. *Texaco, Inc.* (1st Cir. 1970) 434 F.2d 121, 122; *Dixon* v. *Serodino, Inc.* (6th Cir. 1964) 331 F.2d 668, 673.) ■ Unlike the doctrine of seaworthiness, the Jones Act,[3] through incorporation of the Federal Employers' Liability Act[4] (45 U.S.C.A. § 51 et seq.), makes the shipowner liable only for injuries to its employees inflicted by the negligence of its "officers, agents or employees." (*Epling* v. *M. T. Epling Co.* (6th Cir. 1970) 435 F.2d 732, 736, cert. den. (1971) 401 U.S. 963 [28 L.Ed.2d 247, 91 S.Ct. 990].) Hence, negligence is the basis of an injured seaman's action for damages under the Jones Act. (*De Zon* v. *American President Lines* (9th Cir. 1942) 129 F.2d 404, 407-408, aff'd. (1943) 318 U.S. 660 [87 L.Ed. 1065, 63 S.Ct. 814]; *Armit* v. *Loveland* (3d Cir. 1940) 115 F.2d 308, 311.) Such negligence may consist of a breach of the common law duty of care or of a breach of some statutory duty. (*Kernan* v. *American Dredging Co.* (1958) 355 U.S. 426, 432 [2 L.Ed.2d 382, 388-389, 78 S.Ct. 394].)

■ ■ ■ Plaintiff contends defendant was under a duty to provide him with a safe place in which to work, including safe means of ingress and egress to and from the vessel.[5] In support of this contention he cites

---

[3]The Jones Act provides in pertinent part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . ." (46 U.S.C.A. § 688.)

[4]The Federal Employers' Liability Act provides in pertinent part: "Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C.A. § 51.)

[5]Although plaintiff was injured while returning from shore leave, he was then in the "course of his employment" within the meaning of the Jones Act. (*Braen* v.

cases which hold that under the Federal Employers' Liability Act a railroad has the nondelegable duty to provide its employees with a safe place in which to work even when they are required to go onto the premises of a third party over which the railroad has no control. (*Shenker* v. *Baltimore & Ohio R. Co.* (1963) 374 U.S. 1, 7 [10 L.Ed.2d 709, 714, 83 S.Ct. 166]; *Carter* v. *Union Railroad Co.* (3d Cir. 1971) 438 F.2d 208, 210-211; *Kooker* v. *Pittsburgh & Lake Erie Railroad Co.* (6th Cir. 1958) 258 F.2d 876, 878.) ■ It is true that the Jones Act incorporates the standards of the Federal Employers' Liability Act in determining the employer's liability for injuries negligently inflicted on its employees. (*Hopson* v. *Texaco* (1966) 383 U.S. 262, 263 [15 L.Ed.2d 740, 742, 86 S.Ct. 765].) However, because of the essential differences between the conditions and circumstances of employment in the railroad industry and the maritime shipping industry, such incorporation did not necessarily bring along identical standards and application of the Federal Employers' Liability Act in Jones Act cases. (*Vickers* v. *Tumey* (5th Cir. 1961) 290 F.2d 426, 429-430.)

In actions under the Jones Act, it has been held that while a shipowner owes a seaman the duty to provide a safe place in which to perform his work as a seaman, that duty does not extend to his protection when he goes beyond the premises of his employment for purposes of his own and over premises of which his employer has no dominion or control. (*Paul* v. *United States* (3d Cir. 1953) 205 F.2d 38, 41, cert. den. (1953) 346 U.S. 888 [98 L.Ed. 392, 74 S.Ct. 140]; *Todahl* v. *Sudden & Christenson* (9th Cir. 1925) 5 F.2d 462, 464.) Hence, a shipowner is not under a duty to provide a seaman with a safe means of going ashore and returning to his ship beyond the ship's gangplank. (*Dangovich* v. *Isthmian Lines, Inc., supra,* 218 F.Supp. at p. 237; *Wheeler* v. *West India S.S. Co.* (S.D. N.Y. 1951) 103 F.Supp. 631, 634, affd. (2d Cir. 1953) 205 F.2d 354, cert. den. (1953) 346 U.S. 889 [98 L.Ed. 393, 74 S.Ct. 141].) ■ More to the point of the instant case, a shipowner has no duty to furnish transportation to and from the ship to seamen granted shore leave when the ship is anchored away from the dock. (*Miles* v. *States Marine Lines, Inc.* (E.D.Tex. 1971) 325 F.Supp. 1370, 1373; *Lemon* v. *United States* (D.Md. 1946) 68 F.Supp. 793.)

However, if a shipowner contracts with a third party to provide launch service to and from the ship, and a seaman using such facilities is injured through the negligence of the third party, the shipowner may be liable

*Pfeifer Transportation Co.* (1959) 361 U.S. 129, 132-133 [4 L.Ed.2d 191, 194-195, 80 S.Ct. 247].)

under the Jones Act. (See: *Moore-McCormack Lines, Inc.* v. *Boston Line and Service Co.* (D.Mass. 1968) 286 F.Supp. 399, 401.) Liability may be imposed on the theory that where the injury is caused in whole or in part by the fault of others performing, under contract, operational activities of the employer, such others are "agents" of the employer within the meaning of the Federal Employers' Liability Act (*Sinkler* v. *Missouri Pacific R. Co.* (1958) 356 U.S. 326, 331-332 [2 L.Ed.2d 799, 804, 78 S.Ct. 758]), a principle which applies with equal force in actions under the Jones Act. (*Hopson* v. *Texaco, supra,* 383 U.S. 262.) Therefore, if defendant here contracted with the owner of the native boat to transport crewmen of the Santa Ines to the vessel, defendant could be liable for injuries suffered by plaintiff through negligence of the boat owner.

Plaintiff contends defendant was negligent under the Jones Act in failing to issue "reasonable safety instructions, regulations and requirements" concerning transportation for seamen granted shore leave in Qui Nhon. Specifically, plaintiff argues that defendant was under a duty to arrange for transportation by M.S.T.S. launches because such launches and the M.S.T.S. pier were safely equipped, maintained and operated, while the native boats and native pier were not. The contention is without merit. As previously stated, a shipowner has no Jones Act duty to provide transportation to and from the vessel for crewmen granted shore leave. ▉ Moreover, the shipowner is not under a duty to inspect a dock area owned and controlled by third parties before granting shore leave to crew members, or to warn them of any hazards in such area. (*Paul* v. *United States, supra,* 205 F.2d at p. 41; *D'Costa* v. *United States Lines Co., supra,* 227 F.Supp. at p. 181; *Martinez* v. *S.S. Hawaiian Retailer* (S.D.Ga. 1963) 1963 A.M.C. 1188, 1190.)

▉ Plaintiff further contends defendant is liable under the Jones Act because of breach of duty imposed by statute. The statutes cited are: (1) 46 U.S.C.A. §§ 679, 682 and 683, which provide that in order to discharge an incapacitated seaman in a foreign port, a ship's master must take the seaman to a United States Consul to arrange for his return to the United States (see: *Hopson* v. *Texaco, supra,* 383 U.S. at p. 263 [15 L.Ed.2d at p. 741]); and (2) 18 U.S.C.A. § 2195, which makes it a crime for a ship's master to abandon an American seaman in a foreign port. While negligence under the Jones Act may be founded upon breach of a statutory duty (*Kernan* v. *American Dredging Co., supra,* 355 U.S. at p. 432 [2 L.Ed.2d at pp. 388-389]), there must be a causal connection between such breach and the seaman's injury. (*Epling* v. *M. T. Epling Co., supra,* 435 F.2d at p. 735.) Following plaintiff's accident, he was taken to a United States Army hospital in Qui Nhon and the Santa Ines sailed

without him. It does not appear that he was taken to an American consular officer for the arrangement of his transportation back to the United States. However, even if these circumstances established violation of the cited statutes, defendant would not thereby be liable because plaintiff was injured *before* the occurrence of such alleged violation, not as a result thereof.

We now consider whether the entry of summary judgment was proper in light of the principles discussed above. ▮▮▮ ▮▮ ▮▮ Code of Civil Procedure section 437c[6] provides in part: ". . . if it is claimed the action has no merit . . . on motion of either party . . . supported by affidavit of any person or persons having knowledge of the facts . . . the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. . . . The affidavit or affidavits in support of the motion must contain facts sufficient to entitle plaintiff or defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto." ▮▮ Thus, a summary judgment is proper only if the supporting affidavits state facts sufficient to sustain a judgment in favor of the moving party, and the counteraffidavits do not set forth competent and sufficient evidence to present a triable issue of fact. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 261 [223 P.2d 244]; *Burke* v. *Hibernia Bank* (1960) 186 Cal.App.2d 739, 744 [9 Cal.Rptr. 890].) There must be a sufficiently supportive affidavit before defects of any counteraffidavit, either in form or substance, need be examined. (*Southern Pacific Co.* v. *Fish* (1958) 166 Cal.App.2d 353, 366 [333 P.2d 133].)

▮▮ In order to meet the test of sufficiency, and thus require the granting of a motion for summary judgment in the absence of sufficient counteraffidavits, the affidavit of the moving party must satisfy three requirements: (1) it must contain facts establishing every element necessary to sustain a judgment in his favor; (2) such facts must be set forth with particularity, i.e., all requisite evidentiary facts must be stated, not merely ultimate facts or conclusions of law; and (3) the affiant must show that if sworn as a witness, he can testify competently to the evidentiary facts contained in the affidavit. (*Estate of Kerner* (1969) 275 Cal.App.2d 785, 789 [80 Cal.Rptr. 289]; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661].)

---

[6] In a Jones Act case brought in a state court, procedural matters are governed by state law. (*Continental Oil Co.* v. *Lindley* (Tex.Civ.App. 1964) 382 S.W.2d 296, 302.)

As indicated in the discussion of the substantive law, defendant is not liable to plaintiff, either under the doctrine of seaworthiness or the Jones Act, if defendant did not arrange or contract with the owner of the native boats to transport defendant's crewmen back to the Santa Ines. The only declaration filed in support of the motion for summary judgment was that of one of defendant's attorneys. In his declaration the attorney stated: "Neither the Master of the vessel, the vessel's agents, the vessel's owner, nor anyone connected with the vessel other than Dixon had any connection with the launch. The vessel did not contract with the launch for carriage of the ship's personnel. It was a private launch contracted by Mr. Dixon himself." The facts stated are set forth with particularity, and if proved would entitle defendant to a judgment. However, it does not appear that the declarant, if sworn as a witness, could testify competently to these facts. Although he was one of the attorneys for defendant, there is no showing that the matters stated were within his personal knowledge. (Cf. *Schessler* v. *Keck* (1956) 138 Cal.App.2d 663, 670 [292 P.2d 314]; *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 564 [277 P.2d 464].)

Incorporated into the declaration by reference was a letter, apparently from a shipping firm in South Vietnam, signed by one N. V. Lang. The letter stated: "The launch that Mr. Dixon hired to take him back to the vessel had no relationship with the vessel at all. Neither the master nor ourselves have contracted the alleged launch for the carriage of the ship's personnel. It was an all private launch contracted by Mr. Dixon himself." The letter was unauthenticated; there was no stipulation as to its authenticity; declarant did not state, nor did the letter show, who Mr. Lang was or how he came to have knowledge of the matters set forth in the letter. It follows that the letter could not properly be considered in support of the motion for summary judgment. (*Thornton* v. *Victor Meat Co.* (1968) 260 Cal.App.2d 452, 460 [67 Cal.Rptr. 887]; *Donnachie* v. *East Bay Regional Park Dist.* (1963) 217 Cal.App.2d 172, 175-176 [31 Cal.Rptr. 611]; *Miller & Lux, Inc.* v. *Bank of America* (1963) 212 Cal.App.2d 719, 725 [28 Cal.Rptr. 401]; *Callahan* v. *Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 606 [22 Cal.Rptr. 606].)

We conclude that the declaration in support of the motion is not sufficient to support a judgment in favor of defendant under the doctrine of seaworthiness or under the Jones Act. In view of this conclusion, we need not determine whether the declarations filed by plaintiff in opposition to the motion set forth competent and sufficient evidence to present a triable issue of fact. (*Kramer* v. *Barnes* (1963) 212 Cal.App.2d 440, 449 [27 Cal.Rptr. 895].)

■ Although neither party has raised the question, we note that the judgment must be reversed for the further reason that defendant's declaration fails to set forth facts showing plaintiff is not entitled to maintenance, cure and wages under the second cause of action. Indeed, at oral argument counsel for respondent conceded this point. ■ The right to receive maintenance and cure is not dependent upon negligence of the shipowner or unseaworthiness of the vessel. (*Reyes* v. *Motor Vessel Venus II* (D. Puerto Rico 1966) 257 F.Supp. 335, 337; *Jones* v. *United States* (E.D.Va. 1964) 232 F.Supp. 585, 589.) Under general maritime law, a seaman has a right to maintenance and cure[7] for injuries suffered in the course of his service to his vessel, whether such injuries occurred on sea or on land. (*O'Donnell* v. *Great Lakes Co., supra,* 318 U.S. at pp. 41-42 [87 L.Ed. at p. 601].) ■ A seaman injured while on authorized shore leave is in the service of his vessel for the purpose of his right to maintenance and cure (*Aguilar* v. *Standard Oil Co.* (1943) 318 U.S. 724 [87 L.Ed. 1107, 63 S.Ct. 930]), and such right can be defeated only by a showing that the seaman was guilty of " 'some positively vicious conduct—such as gross negligence or willful disobedience of orders.' " (*Warren* v. *United States* (1951) 340 U.S. 523, 528 [95 L.Ed. 503, 508, 71 S.Ct. 432].) Defendant has made no such showing in this case.

The judgment is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

---

[7]"Maintenance" consists of food and lodging comparable to that to which the seaman is entitled while at sea. "Cure" is care including nursing and medical attention. (*Stewart* v. *Waterman Steamship Corp.* (E.D.La. 1968) 288 F.Supp. 629, 634, affd. (5th Cir. 1969) 409 F.2d 1045, cert. den. (1970) 397 U.S. 1011 [25 L.Ed.2d 423, 90 S.Ct. 1239].) The shipowner's duty to provide maintenance and cure continues until the ill or injured seaman is cured or his condition is declared permanent. (*Farrell* v. *United States* (1949) 336 U.S. 511 [93 L.Ed. 850, 69 S.Ct. 707].)