[Civ. No. 31347. First Dist., Div. Four. Jan. 2, 1974.]

ROY P. LONGFELLOW, Plaintiff and Appellant, v.
THE PRESIDENTE MIGUEL ALEMAN et al.,
Defendants and Respondents.

**COUNSEL**

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Stanley A. Ibler, Jr., for Plaintiff and Appellant.

Angell, Adams & Holmes and Samuel L. Holmes for Defendants and Respondents.

**OPINION**

**CHRISTIAN, J.**—Appellant Roy P. Longfellow brought this action to recover damages for injuries allegedly sustained while working aboard a ship of Mexican registry, the *Presidente Miguel Aleman*. The complaint set out two causes of action: a negligence claim, and a claim under the admiralty doctrine of unseaworthiness. Named as defendants were the vessel, her owner Petroleos Mexicanos, and Willamette Iron & Steel Company, the prime contractor which had engaged appellant's employer to assist in repairing the ship. The case was tried without a jury, on the sole issue of liability. The court rendered judgment for the defendants, determining that the admiralty cause of action failed because the ship was not in navigation and that both causes of action were barred by laches.

On June 5, 1961, the *Miguel Aleman* entered the Willamette dry dock in Richmond to undergo a major overhaul. She remained in dry dock until July 3, 1961, when she was towed to a pier owned by Willamette. Repairs

were continued while the ship, afloat on navigable waters, was tied up at the pier.

Appellant was employed as a foreman by a subcontractor engaged in overhauling the ship's main engines. On the night of August 3, 1961, appellant suffered injuries when he fell after hitting his head on a steam pipe as he entered an area on the ship which he testified was not adequately lighted. On August 5 the vessel left the pier and sailed for Mexico. The complaint was filed on July 28, 1964.

■ Before turning to the issues raised by the parties, we must dispose of a jurisdictional problem. The ship *Miguel Aleman* was sued in rem, but jurisdiction to deal with property in an action in rem depends upon a seizure of the property. (*Lee* v. *Silva* (1925) 197 Cal. 364, 368-369 [240 P. 1015].) The record does not show that the vessel was made subject to the court's jurisdiction by seizure, such as by an attachment. Moreover, with the exception of actions to forfeit maritime property used in violation of state law (*Moore* v. *Purse Seine Net* (1941) 18 Cal.2d 835 [118 P.2d 1], affd., *sub nom., C. J. Hendry Co.* v. *Moore* (1943) 318 U.S. 133 [87 L.Ed. 663, 63 S.Ct. 499]), maritime in rem actions must be brought in a federal forum. Because the court has no jurisdiction over the ship, the *Miguel Aleman* must be dismissed as a defendant.

■ Appellant complains of the trial court's failure to make a factual finding on the issue of prejudice to respondents caused by appellant's delay in commencing the suit. Respondents argue that the one-year limitation of Code of Civil Procedure section 340 should be applied instead of the doctrine of laches, and that prejudice therefore need not be shown. They also claim that prejudice is conclusively shown by the evidence.

Admiralty jurisdiction in tort cases depends on the locality of the tort; maritime law governs actions involving torts that occur on navigable water. (*The Plymouth* (1866) 70 U.S. (3 Wall.) 20 [18 L.Ed. 125].) Some cases suggest, as an additional requirement for admiralty jurisdiction, some nexus between the tort and maritime commerce. (E.g., *McGuire* v. *City of New York* (S.D.N.Y. 1961) 192 F.Supp. 866. But see *Weinstein* v. *Eastern Airlines, Inc.* (3d Cir. 1963) 316 F.2d 758 [locality is sole test].) Appellant was injured on a ship afloat in navigable waters; thus the location test is met. Any nexus requirement is met by appellant's participation in the work of repairing a vessel at the time of an accident. (See *West* v. *United States* (1959) 361 U.S. 118 [4 L.Ed.2d 161, 80 S.Ct. 189]; *Atlantic Transport Co.* v. *Imbrovek* (1914) 234 U.S. 52, 61 [58 L.Ed. 1208, 1212, 34 S.Ct. 733].) Therefore, appellant's causes of action unquestionably arise under admiralty jurisdiction.

Federal judicial power extends to all cases of admiralty jurisdiction. (U.S. Const., art. III, § 2, cl. 1.) Providing for the exercise of this power, Congress has given the federal district courts exclusive jurisdiction to decide "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." (28 U.S.C.A. § 1333, subd. (1).) This famous "saving to suitors" clause has been held to allow a state court to provide traditional common law remedies for maritime causes of action brought in a state forum. (*Madruga* v. *Superior Court* (1954) 346 U.S. 556, 560-561 [98 L.Ed. 290, 295-296, 74 S.Ct. 298].) But such an exercise of jurisdiction does not convert the state forum into an admiralty court. (Cf. *Blevens* v. *Sfetku* (1968) 259 Cal. App.2d 527, 531 [66 Cal.Rptr. 486].)

When adjudicating a maritime claim, a state court must preserve all substantial admiralty rights of the litigants by applying general maritime law. (*Intagliata* v. *Shipowners & Mer. etc. Co.* (1945) 26 Cal.2d 365, 371 [159 P.2d 1].) Federal courts sitting in admiralty jurisdiction determine the timeliness of the commencement of an action by applying the doctrine of laches, unless a federal statutory time limit applies. (*Fematt* v. *City of Los Angeles, Cal.* (S.D.Cal. 1961) 196 F.Supp. 89, 93.) It remains to be determined whether a state court must likewise apply the doctrine of laches, as opposed to the state's statute of limitations. In *McAllister* v. *Magnolia Petro. Co.* (1958) 357 U.S. 221 [2 L.Ed.2d 1272, 78 S.Ct. 1201], the United States Supreme Court held "that where an action for unseaworthiness is combined with an action under the Jones Act a [state or federal] court cannot apply to the former a shorter period of limitations than Congress has prescribed for the latter." (*Id.* p. 224 [2 L.Ed.2d at pp. 1275-1276].) The court reached this conclusion in order to protect the rights given to seamen by the Jones Act. But the court did not answer "the broad question of whether a state court is free to apply its own statutes of limitation to an admiralty right of action for which no special limitation is prescribed, or whether it is bound to determine the timeliness of such actions by the admiralty doctrine of laches." (*Ibid.*) The courts of several states have reached divergent results (see Note 91 A.L.R.2d 1417, 1423).

If the question were fresh in California, a strong argument could be made for applying the statute of limitations. Federal law does not *require* a state to make room for admiralty claims in its courts. When a state chooses to make its courts available for the vindication of admiralty rights, the procedural rules governing state litigation are generally applied. It might be thought that the state's statute of limitation, which simply fixes the time within which the state forum is held open to a given class of litigation, affects "the *remedy* only, not the substantive right or obligation." (2 Witkin,

Cal. Procedure (2d ed. 1970) Actions, § 224, p. 1082.) On that understanding the action would be governed by the statute. But the issue is not new in California. In *Curbelo* v. *Matson Navigation Co.* (1961) 194 Cal. App.2d 305, 308 [14 Cal.Rptr. 913], it was held that the admiralty doctrine of laches, not the California statute of limitations, was applicable to an action for personal injuries sustained aboard a vessel in navigable waters. We consider it appropriate to follow the *Curbelo* holding rather than possibly create a conflict in the California authorities by reexamining the question.

■ Having determined that the trial court acted correctly in applying the maritime doctrine of laches, we must inquire whether the court erred in looking by analogy to the one-year provision of Code of Civil Procedure section 340, subdivision 3, rather than to the three-year limitation which governs actions brought under the Jones Act (46 U.S.C. § 688; 45 U.S.C. § 56). Appellant concedes that it was proper "to consider a pertinent statute of limitations, by way of analogy, in evaluating whether there has been a sufficient delay to warrant invocation of the doctrine of laches." (See *Kane* v. *Union of Soviet Socialist Republics* (3d Cir. 1951) 189 F.2d 303.) The three-year limitation provided for in the Jones Act is not the appropriate statute to look to in the present case. Reference is to be had to the appropriate *state* statute of limitations, whereas the Jones Act is a federal statute. Moreover, the circumstances in which the Jones Act apply —suits by seamen against their employers—are not analogous to the circumstances in this case. (See, e.g., *Dawson* v. *Fernley & Eger* (E.D.Va. 1961) 196 F.Supp. 816, 820.) Appellant is not a seaman and he is not suing his employer.

Appellant contends that the one-year limitation of Code of Civil Procedure section 340 is not to be referred to since an action based on unseaworthiness does not depend upon negligence. (*Seas Shipping Co.* v. *Sieracki* (1946) 328 U.S. 85, 93-94 [90 L.Ed. 1099, 1105-1106, 66 S.Ct. 872].) But section 340, subdivision 3, of the Code of Civil Procedure applies to personal injury suits founded on theories other than negligence. (*Rubino* v. *Utah Canning Co.* (1954) 123 Cal.App.2d 18, 26 [266 P.2d 163].) The doctrine of unseaworthiness has been characterized as an implied warranty of the ship's condition by the shipowner. (See *Roper* v. *United States* (1961) 368 U.S. 20, 24 [7 L.Ed.2d 1, 4, 82 S.Ct. 5].) California's one-year statute applies to actions to recover for injuries sustained as a result of a breach of warranty. (*Rubino* v. *Utah Canning Co., supra;* see generally *Paton* v. *American President Lines, Ltd.* (N.D.Cal. 1963) 236 F.Supp. 350; *Carslund* v. *United States* (N.D.Cal. 1950) 88 F.Supp. 105.) The trial court

acted correctly in looking to the one-year statute of limitations established by section 340 of the Code of Civil Procedure. .

█ Laches includes two elements: delay and prejudice resulting from the delay. (*Kane* v. *Union of Soviet Socialist Republics, supra,* 189 F.2d 303.) "The running of the state statute of limitations creates a presumption of detriment to the defendant . . . and has the effect of shifting to the plaintiff the burden of showing that his delay was excusable and that defendant was not prejudiced thereby." (*Curbelo* v. *Matson Navigation Co., supra,* 194 Cal.App.2d 305, 308.)

Since appellant filed his complaint nearly three years after the injury occurred, he bears the burden of showing that the delay was excusable and did not prejudice respondents. █ Appellant requested findings of fact on the issue of prejudice but the court did not make findings on that issue. Nevertheless, the court concluded that appellant's claim was barred by laches; that conclusion was supported only by findings on the issue of delay.

█ Section 632 of the Code of Civil Procedure requires the trial court to make findings of fact which "fairly disclose the court's determination of all issues of fact." Failure to make a necessary finding is reversible error. (*Auer* v. *Frank* (1964) 227 Cal.App.2d 396, 406 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108].) This court is unable to infer that the trial court impliedly made the missing findings. (Code Civ. Proc., § 634.) Similarly, it would be preferable for the appellate court, acting under Code of Civil Procedure section 43, not to supply the missing finding when that can so readily be done by the judge who heard the evidence. However, it is not necessary to place upon the trial court and upon the parties the burden of retrying all issues.

Because the further course of the litigation will be controlled by a decision which the trial court will make as hereinafter provided, it is appropriate to deal with appellant's second major point, i.e., the contention that the evidence does not support the court's finding that the ship was out of navigation.

█ Under maritime law, a shipowner is under an absolute nondelegable duty to provide a seaworthy ship. (*Dixon* v. *Grace Lines, Inc.* (1972) 27 Cal.App.3d 278, 284-285 [103 Cal.Rptr. 595].) The doctrine does not apply if the vessel is out of navigation; whether a ship is out of navigation is a question of fact. (*Pollock* v. *Standard Oil Co. of Cal.* (1965) 231 Cal. App.2d 714, 717 [42 Cal.Rptr. 128].) The trial court's determination of this factual issue is reviewed under the substantial evidence test. The re-

viewing court must sustain the findings if they are supported by substantial evidence; it must disregard contrary evidence and draw all reasonable inferences in favor of the findings. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881-882 [92 Cal.Rptr. 162, 479 P.2d 362].)

 In determining whether a ship is out of navigation because of repairs, courts look to the following factors: the character of work performed by the shipyard, the presence or absence of the crew, whether or not the crew was performing the customary work of seamen on shipboard, and the degree of control by the shipyard over the vessel. (See, e.g., *Roper* v. *United States, supra,* 368 U.S. 20; *West* v. *United States* (1959) 361 U.S. 118 [4 L.Ed.2d 161, 80 S.Ct. 189]; *Pollock* v. *Standard Oil Co. of Cal., supra,* 231 Cal.App.2d 714.) In *West,* the Supreme Court stated: "the focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done, rather than the specific type of work that each of the numerous shore-based workmen is doing on shipboard at the moment of injury. The job analysis which the latter would call for would lead to fortuitous results." (*West* v. *United States, supra,* at p. 122 [4 L.Ed.2d at p. 165].)

 The manager of the shipyard repair project testified that the total cost of the work was $510,019.62. While the ship was in dry dock for nearly one month her hull was sandblasted, inspected and painted. Some hull plates were removed; propellers and rudder were repaired. After the *Miguel Aleman* was towed to the outfitting dock in navigable waters, a major overhaul was performed on her two diesel engines. The pistons were removed and renewed; new cylinder liners were installed. New fuel injectors were installed, and the main bearings were removed and overhauled. The 12 crankshaft bearings were dismounted and renewed. During the overhaul, many types of repairmen worked on the vessel, such as pipefitters, electricians, and machinists. The ship's lighting generators were dismantled; electricity, fresh and salt water, steam and compressed air were drawn from facilities ashore.

On August 3, 1961, the day appellant was injured, the vessel's overhaul was nearing completion; Willamette began dock tests on the starboard engine, but the port engine was not operating. According to the shipyard manager, the vessel could "probably limp" and "kick along on one engine on slow rpm's" that day. The 20 x 40-foot skylight in the weather deck over the engine room had not yet been replaced. Appellant admitted that a "couple of days work" remained to be completed on August 3. The ship was still under the control of the shipyard on August 3, 1961. Tests continued up to an hour and one-half before the ship's departure on August 5.

Appellant points out that the crew ate, slept, stood watch, and worked on shipboard prior to the accident; he contends that this shows the *Miguel Aleman* was in navigation. But the status of the crew is only one factor to be considered when deciding whether a ship is in navigation. (*Pollock* v. *Standard Oil Co. of Cal., supra,* 231 Cal.App.2d 714, 717.) The presence of the crew on shipboard could be explained as resulting from their being in a foreign port.

The finding that the *Miguel Aleman* was out of navigation at the time of appellant's injury is supported by substantial evidence. (Cf. *McQuaid* v. *United States* (3d Cir. 1964) 337 F.2d 483.)

The Mexican vessel *Presidente Miguel Aleman* will be dismissed as a party.

The judgment is affirmed with respect to the cause of action for unseaworthiness. With respect to the cause of action for negligence the judgment is reversed with directions to make findings on the issue of prejudice, after taking further evidence on that issue if the court deems it necessary. If the action is found not to have been barred by laches, the court will make findings concerning respondents' alleged negligence and take further proceedings in conformity therewith.

Devine, P. J., and Rattigan, J., concurred.