[Civ. No. 34311. Second Dist., Div. Four. May 27, 1970.]

ALVIN J. McCOWN, Plaintiff and Appellant, v.
JAMES R. SPENCER, JR., et al., Defendants and Respondents.

218

**COUNSEL**

Culliton & Hunter and Daniel J. Culliton for Plaintiff and Appellant.

Boyle, Atwill & Stearns and James B. Boyle for Defendants and Respondents.

**OPINION**

**DUNN, J.**—This is an action brought by the intended buyer of real property against the sellers for damages caused by the sellers' alleged breach of their escrow agreement. The case went to trial on the basis of the first and fifth causes of action pleaded in a second amended complaint. The first cause of action was for breach of contract. The fifth cause of action

purported to sound in fraud but merely alleged statements made by the sellers, after a closing date specified in the escrow agreement, upon which statements plaintiff relied for an extension of the time for performance. Accordingly, the trial court treated it as pleading an excuse, by way of estoppel, for nonperformance by plaintiff.

A verdict was returned for plaintiff and, on defendants' motions, the court thereafter granted judgment for the defendants notwithstanding the verdict for plaintiff[1] and, alternately, ordered a new trial. (Code Civ. Proc., § 629.) Plaintiff appeals from the judgment and from the order granting the new trial. (Code Civ. Proc., § 904.1, formerly § 963.)

The evidence disclosed that on May 14, 1963, escrow instructions were prepared and signed by the parties at a branch of Union bank, as escrow holder. They provided for a total sale price of $160,000, of which $75,000 was to be in cash, an encumbrance of $75,000 was to be assumed by the buyer and $10,000 was to be evidenced by a promissory note bearing 6 percent interest. Outside of escrow, plaintiff had handed to defendants a check for $5,000, apparently as earnest money, to be deposited by defendants in the escrow and credited against the cash required of plaintiff.

Pertinent parts of the escrow instructions read: "Prior to August 14, 1963 Buyer will hand or cause to be handed to you, $75,000, $5,000 of which is deposited herewith by Seller. Seller will hand you a deed . . . to enable you to comply wth these instructions, all of which funds and documents you are instructed to use or deliver at any time if prior to said date, *as qualified by the provisions set forth in paragraph* 5 [italics added] . . . all conditions of this escrow have been complied with . . . .

". . . . . . . . . . .

"The unsecured promissory note shall be drawn on form to be approved by the principals hereto, in the principal amount of $10,000.00, executed by Alvin J. McCown, a married man, or nominee, in favor of James R. Spencer, Jr. and Kathryn Spencer, husband and wife, as joint tenants . . . with interest at six (6) % per annum . . . . Principal payable on or before thirty (30) days from date of close of escrow.

". . . . . . . . . . .

"5. If any of the conditions of this escrow are not complied with prior to the date specified on the first line on page one of these instructions any party who has fully complied with his instructions may, in writing, subse-

---

[1]The court specified two grounds for ordering judgment n.o.v.: "(1) that there was not performance by the plaintiff or his 'nominee' within the time specified; and (2) the plaintiff had assigned his contract to purchase to Milligan . . . ."

quent to that date . . . demand return of his money, documents and/or property, upon receipt of which demand . . . you shall withhold action except to mail copies of such demand to all other parties . . . . If no such demand is made you are to close the escrow as soon as the conditions (except as to time) have been complied with.

". . . . . . . . . . . .

"8. THESE AND ALL ADDITIONAL OR AMENDED INSTRUCTIONS SHALL BE SUBJECT TO THE FOLLOWING:

". . . . . . . . . . . .

"(g) Time is of the essence of these and all additional or changed instructions."

A brief review of the evidence is required. ■ In considering appellant's appeal from the judgment notwithstanding the verdict, the evidence must be considered in the light favoring appellant, all inferences therefrom being drawn in appellant's favor. *Hergenrether* v. *East* (1964) 61 Cal.2d 440, 442 [39 Cal.Rptr. 4, 393 P.2d 164]; *Bufano* v. *City & County of San Francisco* (1965) 233 Cal.App.2d 61, 68 [43 Cal.Rptr. 223]. This is contrary to the usual rule on appeal whereby all inferences are drawn in favor of sustaining the judgment and therefore in favor of a respondent.

The evidence discloses that appellant and the respondents had been acquainted for several years. Respondent, Dr. James Spencer, Jr., informed appellant that he had received an offer of $150,000 for his property. Appellant offered to buy it for $160,000 and the escrow ensued. By an oral side-agreement, with which we are not here concerned, respondents retained an option to maintain a one-sixteenth interest in the property, representing the proportion that the $10,000 (to be evidenced by the promissory note) bore to the total purchase price. Because of this interest, respondents joined in appellant's successful efforts to have the property rezoned so that it might be improved by the construction of a convalescent hospital. After the rezoning, they tried to obtain $200,000 as a price for the property whereupon, being unsuccessful, appellant suggested recontacting respondents' original offeror, Mr. Milligan who, on learning of the rezoning, offered to purchase the property for $180,000. Appellant then named Milligan as his nominee.

A modification of the escrow instructions, dated June 24, 1963, was signed by both sides and by Milligan, calling for a payment by Milligan of $25,000 to appellant, "$5,000 of which is deposited herewith," following which title to the property was to be vested in Milligan (or his nominee) contingent upon approval of a tract subdivision map by responsibile au-

thorities. The modification provided: "Upon receipt in escrow of written waiver from E. J. Milligan of the aforementioned contingency, you are instructed to accept all further instructions in this escrow from said nominee, and all funds deposited by me herein are to be used for the credit of and upon instructions of said vestee."

Thereafter several discussions were had with Milligan, or his representative, who desired to extend the term of the escrow; but on June 26th and again on July 11th, 1963, respondents sent letters to the escrow holder, to appellant and to Milligan advising of respondents' intention to abide strictly by the time provisions of the escrow and stating no time extension had been, or would be, granted.

Before August 13, 1963, respondents deposited in escrow an executed deed granting title in the property, and also deposited a form of promissory note acceptable to them. Neither on nor before August 13th did appellant perform under the escrow and on August 23, 1963, respondents sold the property for $170,000 to a savings and loan association with whom Milligan had arranged to "warehouse" it, *i.e.:* to purchase it, giving him an option to repurchase it at a later date. Appellant's lawsuit followed soon thereafter. A number of points are raised, requiring separate discussion.

### I. *Did Respondents' Sale of the Property Constitute a Breach of the Escrow Contract?*

As noted, sellers and buyer agreed that, before August 14, 1963, each would deliver a deed, or cash and a note, respectively, to the escrow holder, further agreeing that "time is of the essence." Paragraph 5 of the instructions went on to provide that if a condition of the escrow was not met before August 14th, then any party who had fully complied could, in writing, *after that date* demand the return of whatever he had deposited with the escrow holder; and, "If no such demand is made you are to close the escrow as soon as the conditions (except as to time) have been complied with."

Appellant contends, and respondents dispute, that paragraph 5 does away with "prior to August 14, 1963" as the closing date of the escrow. This means that, though respondents performed, appellant nevertheless could satisfy his escrow obligations after August 13th and require the escrow to close unless respondents, after August 13th but before appellant performed, made a written demand for return of the papers they deposited. We agree this is the correct interpretation. (See: *Weisberg* v. *Ashcraft* (1963) 223 Cal.App.2d 793 [36 Cal.Rptr. 188].) Since time was of the essence, strict compliance with the date of performance was required, if

demanded after the date specified, and performance within a "reasonable" time after demand would be impermissible. Accordingly, if the buyer had not performed by the end of August 13th, then on August 14th the sellers could have given a written demand for return of the deed they had deposited. But the sellers gave no such demand until August 23d, when a demand letter was addressed to appellant and the bank. Since appellant had not fully performed by that date, the sale of the property by respondents to a third party on August 23d would not constitute a breach of the contract, absent other considerations.

This leads us to the next question, namely, whether the sellers were estopped to terminate the escrow by their letter dated August 23d. If they were, their sale of the property that date constituted a breach of the agreement.

## II. *Were Respondents Estopped from Terminating the Escrow and Selling the Property to a Third Party?*

The trial court instructed the jury on the nature of an estoppel in the terms of Code of Civil Procedure, section 1962, subdivision 3 (now contained in Evid. Code, § 623) and submitted to the jury a number of special verdicts. (Code Civ. Proc., § 625.) One of these inquired: "Do you find that defendants by their conduct or action are estopped to claim that plaintiff or his nominee did not perform the contract in time?" to which the jury responded "Yes." The special verdict went on to inquire, "If yes, what action or conduct of defendants constituted such estoppel?" The jury found that: "The defendant gave no indication that anything was wrong with the escrow; however, he refused to sign papers before consulting with his lawyer."

After the hearing on respondents' motion for judgment n.o.v. the court made a minute order of its ruling. In it was stated, among other things: "There was no evidence of any fraud or anything whatever that might constitute an estoppel whereby the plaintiff or his nominee was justified or led to believe that the time was extended. *The action of the defendant which the jury characterized as estoppel occurred after the time had already run out.*" (Italics added.) We consider whether there was any evidence of estoppel. If there was, then the granting of the judgment n.o.v. on this ground was error.

It is apparent from the quotation of the minutes that the trial judge misconstrued the contract, concluding the agreement terminated by its own terms on August 14th and that respondents' conduct thereafter could not work an extension of the time for performance. As pointed out, we hold otherwise.

The evidence disclosed that at noontime on August 14, 1963, Dr. Spencer, one of the two respondents, went to the bank branch holding the escrow. A Mr. Allen was there, representing the nominee, Mr. Milligan. Allen requested that respondents sign a document ". . . which stated that the total consideration in this escrow was $180,000 . . . ." Dr. Spencer testified this was the first time he had heard such a figure and, as a result, he refused to sign the document, returning to his office. Later that afternoon, appellant and his attorney went to the office of respondent Dr. Spencer. They found Milligan already there. He had procured some papers from the escrow clerk which he desired Spencer to sign.

Appellant's attorney, as a witness for appellant, testified: "He [Dr. Spencer] said he was sure that everything was in proper order, that he didn't think there were any problems and everything was sailing along all right, that he just wanted to talk to his lawyer before he signed these papers." Spencer told them his own attorney was out of town but he intended to see him the next day. Dr. Spencer never signed the documents but on August 15th his wife did, so that if the attorney approved them when he returned, only the signature of her husband would be needed.

Between August 15th and 19th appellant telephoned respondents several times. On two of these occasions Dr. Spencer told him that he believed everything was in order, saying "that the escrow would close and not to worry about it." Despite this reassurance, appellant concluded that closure of the escrow was being held up because his nominee, Milligan, was not acceptable to respondents. For that reason he secured a cashiers check for $72,000 and on August 21st took it to the escrow, instructing the bank by letter to hold it until respondents deposited a grant deed in escrow (he apparently was unaware a grant deed already was deposited) and complied with the terms of the original escrow instructions. With the $5,000 previously paid into escrow, a total of $77,000 was thus made available.

Subdivision 3 of former Code of Civil Procedure, section 1962 reads: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." This states a rule of estoppel. The evidence recited would support a finding that respondents were estopped from terminating the escrow on the date and in the manner which they attempted. Appellant relied upon Spencer's statements to him that he need not worry, that the escrow would close and he would sign the amendments on the return of, and approval by, his attorney. Appellant's failure completely to perform was thus excusable and respondents were estopped to contend otherwise. Appellant was never informed that the

attorney disapproved of these papers nor did he learn of respondents' attempted termination of the escrow until he received respondents' letter dated August 23d. But before receiving it, respondents, by their absolute sale of the property on August 23d, had placed it beyond their own ability to perform and had thus breached the contract.

III. *Did Appellant Assign His Rights as Buyer Under the Escrow Agreement, Resulting in Loss of Standing to Sue?*

■ Respondents urged that appellant did more than designate Milligan as his nominee; that, in fact, he assigned all of his rights to Milligan and as a result had no standing in court. This issue was presented to the jury by instructions, the court also submitting a special verdict which read: "Did plaintiff assign his rights as purchaser under the escrow agreement with James R. Spencer, Jr. and Kathryn Spencer to E. J. Milligan?" The jury responded, "No."

Despite this verdict the court, in ruling on the motion for judgment n.o.v., made a finding in its minute order as follows: "From a careful review of all the evidence, the Court concludes that Milligan was not a mere nominee, but he had 'bought the deal' and was in legal effect an assignee. Therefore, on the two grounds: i.e. (1) [that plaintiff and nominee did not perform in time] and (2) the plaintiff had assigned his contract to purchase to Milligan, the motion for judgment notwithstanding the verdict be and is hereby granted."

■ An assignor may not maintain an action upon a claim after making an absolute assignment of it to another; his right to demand performance is extinguished, the assignee acquiring such right. (5 Cal.Jur.2d Rev. 478, Assignments § 71; Rest., Contracts, § 150, p. 180.) ■ To "assign" ordinarily means to transfer title or ownership of property (*Commercial Discount Co.* v. *Cowen* (1941) 18 Cal.2d 610, 614 [116 P.2d 599]), but an assignment, to be effective, must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person. (*Cockerell* v. *Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291 [267 P.2d 16].) It is the substance and not the form of a transaction which determines whether an assignment was intended. (*Bergin* v. *van der Steen* (1951) 107 Cal.App.2d 8, 16 [236 P.2d 613]; *Anglo Cal. Nat. Bank* v. *Kidd* (1943) 58 Cal.App.2d 651, 655-656 [137 P.2d 460].) If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the chose in action, then an assignment will be held to have taken place. *Goldman* v. *Murray* (1912) 164 Cal. 419, 422 [129 P. 462]; *Norton* v. *Whitehead* (1890) 84 Cal. 263, 268 [24 P. 154]; *California Pac. Title Co.* v. *Moore* (1964) 229 Cal.App.2d 114, 117 [40 Cal.Rptr. 61].

■ From the foregoing it will be evident that "intent" is of major significance. Appellant testified that after August 14, 1963, he told respondents' attorney, "My position is that I am entitled to buy this property." He called respondents on August 15, 16, 17, 18 and 19, successfully reaching Dr. Spencer twice, to discuss the close of escrow; on August 21st he deposited a check for $72,000 and advised the escrow holder to close it on performance by the sellers. This evidence, and inferences reasonably deducible from it, tends to negate any intent by appellant to assign his rights to Milligan.

■ A basic requirement for sustaining a judgment n.o.v. is that no substantial conflict in the evidence exists. *Robinson* v. *North American Life & Cas. Co.* (1963) 215 Cal.App.2d 111, 118 [30 Cal.Rptr. 57]. ■ The judgment ordered for defendants, notwithstanding the verdict for plaintiff, must be reversed since the evidence was in conflict on the points foundational to the trial court's rulings: that appellant's rights were assigned to Milligan and that respondents were not estopped to contend appellant's failure fully to perform excused their termination of the escrow.

We now come to a discussion of the trial court's granting of respondents' motion for new trial.

### IV. *Did the Trial Court Properly Grant a New Trial to Respondents?*

Respondents' "Notice of Intention To Move For New Trial" stated three grounds as follows: (1) accident or surprise, (2) insufficiency of the evidence and (3) the verdict is against the law. The sole support for the motion was that it was "on the minutes of the Court." No affidavits were filed in support.

■ Code of Civil Procedure section 657 requires that, if a motion for a new trial be granted, the court specify its grounds and its reasons.[2] Purporting to comply with this section, the court's minute order stated: "1. Insufficiency of the evidence. The evidence is insufficient in the same particulars as set out specifically above in granting the motion for judgment notwithstanding the verdict and they are incorporated herein at this place with the same changes and effect as if repeated at this point.

---

[2]Code of Civil Procedure, section 657 states in part: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated . . . . On appeal from an order granting a new trial . . . (a) the order shall not be affirmed upon the ground of insufficiency of the evidence to justify the verdict . . . unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of insufficiency of the evidence . . . it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order . . . and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."

"2. Accident or suprise, [*sic*] which ordinary prudence would not have guarded against. The Court submitted to the jury the issue of estoppel but this issue was not raised by the pleadings nor in the pretrial statement and the Court now concludes that it was in error to submit this issue to the jury.

"3. The verdict is against the law. As indicated above, the evidence is insufficient. The evidence showed without contradiction that the defendants fully performed their agreement and that neither the plaintiff nor his 'nominee' ever performed his or their agreement.

"The special verdict of the jury shows that the defendants did nothing by way of fraud or estoppel to prevent the plaintiff or his nominee from closing the contract. Hence the general verdict which is contrary to the special verdict must be set aside."

*Insufficiency of the evidence.* First to be considered is the adequacy of the trial court's statement of insufficiency. The *ground* is fully stated; we look to see if the *reason* behind it is adequately supporting. (*Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315].)

The court's "reason" merely refers to the order granting the judgment n.o.v. The latter order stated only that: "There was no evidence of any fraud or anything whatever that might constitute an estoppel . . . . *The action of the defendant which the jury characterized as estoppel occurred after the time had already run out.*" (Italics added.) That minute order also concluded that Milligan was an assignee as a matter of law. (See: fn. 1.) As we have noted, the trial court's legal conclusions were erroneous on both issues. It is apparent the court granted a new trial on this ground because it believed there was a total lack of any material evidence to support the verdict, rather than because the court, after weighing it, believed the evidence failed to preponderate and the jury should have reached a different verdict.

In *Mercer* v. *Perez, supra,* 68 Cal.2d, the following is said (pp. 116-117): "Thus in *Greenwood* v. *Boque* . . . [a Washington case] the only 'reason' stated by the trial court for granting the plaintiffs' motion for new trial after a verdict for the defendants in an automobile accident case was that 'there was no evidence to justify a verdict except on behalf of the plaintiffs' . . . . The Supreme Court of Washington observed that the trial court's statement 'is of no assistance to an appellate court. It amounts to no more than an invitation to search the record . . . .' " In the case at bench, the trial court's order states in part: "There was no evidence of any fraud or anything whatever that might constitute an estoppel." Such a specification is inadequate and is of little assistance to us and, as we have noted, the conclusion expressed is incorrect. We do not read a later case, *Kincaid* v. *Sears, Roe-*

*buck & Co.* (1968) 259 Cal.App.2d 733 at page 738 [66 Cal.Rptr. 915], as placing any different interpretation upon the intent of *Mercer.* Accordingly, we hold the granting of a new trial on the ground stated is insufficiently supported.

■ *Accident or surprise which ordinary prudence could not have guarded against.* One ground stated for granting the new trial was "accident or surprise." The court's stated reason was: "The Court submitted to the jury the issue of estoppel but this issue was not raised by the pleadings nor in the pretrial statement and the Court now concludes it was in error to submit this issue to the jury." The foregoing is not a recital of "accident or surprise," as that term is used in Code of Civil Procedure, section 657. Rather, it states the court's conclusion that it instructed the jury on an issue not raised by the pleadings and therefore committed an error at law.

The terms "accident" and "surprise," as used in Code of Civil Procedure, section 657, are given substantially the same meaning. *Kauffman* v. *De Mutiis* (1948) 31 Cal.2d 429, 432 [189 P.2d 271]; *South Santa Clara etc. Dist.* v. *Johnson* (1964) 231 Cal.App.2d 388, 406 [41 Cal.Rptr. 846]. ■ Section 658 of the Code of Civil Procedure specifies that an application for new trial made on such ground ". . . must be made upon affidavits." No affidavits were filed by respondents in support of their motion for new trial. Under some circumstances, the absence of a supporting affidavit is noncalamitous and other support appearing in the record may be accepted (see: *Webber* v. *Webber* (1948) 33 Cal.2d 153, 163-164 [199 P.2d 934]), but such circumstances are not here present.

During argument of respondents' motion for directed verdict, the court stated, for the first time of record, that it interpreted appellant's fifth cause of action as spelling out estoppel. Counsel for respondents did not then claim surprise and move for a continuance, ask to reopen the case and produce further evidence, or move for a mistrial. The rule has been stated: "where a situation arises which might constitute legal surprise, counsel cannot speculate on a favorable verdict. He must act at the earliest possible moment for the 'right to a new trial on the ground of surprise is waived if, when the surprise is discovered, it is not made known to the court, and no motion is made for a mistrial or continuance of the cause.' " *Kauffman* v. *De Mutiis, supra,* 31 Cal.2d at p. 432. (Also see: *Baker* v. *Berreman* (1943) 61 Cal.App.2d 235, 241 [142 P.2d 448].) There here being no supporting affidavit and no timely claim of surprise, the granting of a new trial on this ground was error.

■ *The verdict is against the law.* As its third and last ground for

granting a new trial the court stated "the verdict is against the law."[3] The minute order shows that the court granted a new trial on this ground on the premise that the evidence was totally insufficient. Such a reason, if supported by the record, is a proper one. Thus: "[6] A decision can be said to be 'against law' only: . . . (3) where the evidence is insufficient in law and without conflict in any material point. . . . [8] '[T]he words "against law" do not import a situation in which the court weighs conflicting evidence and merely finds a balance against the judgment.' " *Kralyevich* v. *Magrini* (1959) 172 Cal.App.2d 784, 789 [342 P.2d 903]. (And see: *Thompson* v. *Guyer-Hays* (1962) 207 Cal.App.2d 366, 375 [24 Cal.Rptr. 461]; *Opp* v. *Sykes* (1961) 194 Cal.App.2d 208, 211 [15 Cal.Rptr. 1].)

Counsel for respondents entertained an erroneous concept of the application of estoppel in this case. During the hearing of his motion for judgment n.o.v. and for a new trial, he argued: ". . . to invoke the doctrine of estoppel evidence had to be produced that the defendants did something *prior* to August the 14th . . . ."; ". . . there is no evidence of any kind produced which would lead the plaintiff to believe that he didn't have to perform *prior* to August the 14th."; and "the estoppel issues goes to the point as to whether or not we did anything *before* August the 14th . . . ." (Italics supplied in each instance.)

The trial court accepted this concept. Had the court been correct in deciding that only conduct before August 14th could create an estoppel, then the granting of a new trial because the verdict was "against the law" would have been proper; there was no evidence of such conduct before August 14th. But, as we have noted, an estoppel could be based upon acts occurring after August 14th and evidence of such acts was received.

The court's minute order also stated: "The special verdict of the jury shows that the defendants did nothing by way of fraud or estoppel to prevent the plaintiff or his nominee from closing the contract. Hence the general verdict which is contrary to the special verdict must be set aside." Actually, in its special verdict the jury *did* find that respondents were estopped to claim appellant failed to perform in time. That being so, the general verdict conformed precisely with the special verdict.

The jury did *not* find the conduct occurred *after* August 14th, but this is implicit in its finding that: "The defendant gave no indication that anything was wrong with the escrow; however, he refused to sign papers before consulting with his lawyer." Without dispute, the refusal to sign papers

---

[3]Such ground is to be distinguished from the confusingly similar seventh ground furnished by Code of Civil Procedure, section 657, subdivision 7, namely, "error in law." (See 3 Witkin Cal. Procedure (1954 ed.) pp. 2062-2063, Attack On Judgment In Trial Court § 17.)

occurred after August 14th. The trial judge believed any conduct after that date was immaterial to establish an estoppel. There being no evidence of estoppel before that date, he concluded the general verdict was contradicted by the special verdict. We hold just the opposite.

We have reviewed the entire record with an eye to affirming the order granting a new trial on the two grounds last discussed, as directed by the language of section 657.[4] However, we have been unable to find any substantial error which would support either ground. Accordingly, the order granting a new trial on any of the three grounds specified cannot be sustained.

Judgment for defendants notwithstanding the verdict for plaintiff is reversed; the order granting defendants a new trial likewise is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied June 17, 1970, and respondents' petition for a hearing by the Supreme Court was denied July 22, 1970.

---

[4]This reads: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except . . . (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence . . . ."