**BNY MIDWEST TRUST COMPANY in its Capacity as Indenture Trustee, RBC Dain Rauscher, Inc., and Urfina Securities, S.A., Plaintiff–Appellants,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant–Appellee.**

No. 04–56842.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2006.

Filed Dec. 19, 2006.

Eric J. Taube, Esq., Mark C. Taylor, Esq., Austin, TX, for Plaintiff–Appellants.

David E. Reynolds, Esq., Kevin D. Warnick, Esq., Lewis Brisbois Bisgaard & Smith, LLP, Los Angeles, CA, for Defendant–Appellee.

Before: CUDAHY,* B. FLETCHER, and GRABER, Circuit Judges.

## MEMORANDUM **

BNY Midwest Trust Company ("BNY"), as Indenture Trustee, filed a claim under Financial Institution Bond No. 473–9120 ("the bond" or "the fidelity bond") issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") to recover losses allegedly suffered by RBA Dain Rauscher, Inc. ("RBA") and Urfina Securities, S.A. ("Urfina"). National Union issued the fidelity bond to Travelers Receivable Finance LLC ("Travelers") to cover losses suffered by Travelers caused by fraudulent or dishonest acts of Travelers' employees. National Union denied the claim filed by BNY. BNY brought this lawsuit alleging that its security interest in the fidelity bond as described in the Indenture Agreement provided it with a right to file the claim and bring the present lawsuit. The district court granted the defendant's motion for summary judgment and denied the plaintiffs' motion for a new trial. We affirm both decisions.

1. The district court did not err in granting the defendant's motion for summary judgment.

A grant of summary judgment is reviewed *de novo*. *IlioUlaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1093 (9th Cir. 2006). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The court should view the evidence in the light most favorable to the non-moving party, here, the plaintiffs, drawing all reasonable inferences. *IlioUlaokalani Coalition*, 464 F.3d at 1088.

To begin, it is important to understand the nature of the fidelity bond at issue in the present case. National Union contends that the fidelity bond is not a liability policy and that the alleged loss for which the plaintiffs are seeking recovery is a third-party loss not covered by the policy. Under a contract of indemnity against *loss*, the insurance company does not become liable until the insured has suffered a proven loss; in contrast, under a contract of indemnity against *liability*, the obligation of the insurance company becomes fixed when liability attaches to the insured. *See* Lee R. Russ, *Couch on Insurance* § 160.7 (3d ed.2006).

---

* The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

The fidelity bond only indemnifies against loss suffered by the insured, Travelers. Both the Servicing Agreement, which contains the requirement of a fidelity bond, and the fidelity bond itself provide proof of this. The Servicing Agreement provides:

> 4.05 *Fidelity Bond.* TAC shall maintain, with respect to the Servicer, at TAC's expense, a *blanket fidelity bond in favor of the Issuer* in the amount of $2,000,000, with broad coverage with a responsible insurance company covering all officers, employees or other persons acting on behalf of the Servicer in any capacity with regard to the Collateral to handle funds, money, documents and papers relating to the Collateral.

Moreover, Rider #2, which specifically concerns the loss covering Servicing Contractors, provides:

> A. Loss through any dishonest or fraudulent act committed by any Servicing Contractor, as hereinafter defined, acting alone or in collusion with others.

> Dishonest or fraudulent acts as used in this Insuring Agreement shall mean any dishonest or fraudulent acts committed by such Servicing Contractor with the manifest intent:

> (a) *to cause the Insured to sustain such loss[.]*

Because the fidelity bond indemnifies against the insured's loss and not third-party liability, Travelers must suffer the loss and file the claim. The fact that Travelers might suffer a loss in the future, even though that loss allegedly is the same loss suffered by RBA and Urfina, does not give rise to a valid claim.

The plaintiffs propose four bases under which BNY has standing to file a claim under the fidelity bond. First, BNY could be seen as an assignee of the fidelity bond; second, BNY's security interest in the fidelity bond could constitute a "collateral assignment"; third, certain provisions of the Uniform Commercial Code ("UCC") concerning rights of secured parties could provide the basis for standing; and fourth, the foreclosure sale on the fidelity bond, which occurred after the district court granted the defendant's summary judgment, could be seen as curing all concerns about assignment since RBC and Urfina allegedly now have legal title to the fidelity bond. None of these bases provides the plaintiffs with the right to bring the claim or standing to bring this lawsuit.

■ BNY has not shown that the fidelity bond has been assigned to it. Under California law, there are two hallmarks of an assignment:

> To "assign" ordinarily means to *transfer title or ownership* of property, but an assignment, to be effective, must include *manifestation to another person by the owner of his intention* to transfer the right, without further action, to such other person or to a third person.... If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title ..., then an assignment will be held to have taken place.

*McCown v. Spencer,* 8 Cal.App.3d 216, 87 Cal.Rptr. 213, 219 (1970) (emphasis added) (citations omitted). The plaintiffs contend that the "lien and security interest" phrasing of the Granting Clause of the Indenture Agreement constitutes an assignment.[1] However, a lien does not result in

---

1. The Granting Clause of the Indenture Agreement provides in pertinent part:
   The Issuer [Travelers] hereby Grants to the Trustee [BNY] for the exclusive benefit of the

Holders, a lien upon and a security interest (which the Issuer represents and warrants will be a first-priority security interest) in (a) ..., and (g) the $2,000,000 fidelity bond re-

assignment of ownership; "a lien ... transfers no title to the property subject to the lien." Cal. Civ.Code § 2888. Moreover, in order to prove an assignment, there must also be "clear and positive" evidence of such. *Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d 284, 267 P.2d 16, 21 (1954). The "lien upon and security interest" language in the Indenture Agreement does not constitute clear and positive evidence of an assignment; rather, this language is simply clear and positive evidence of an equitable right or interest in the bond. Therefore, BNY fails to provide adequate support for us to find that it is an assignee, at least as traditionally defined, of the fidelity bond.

■ The plaintiffs next ask this court to view the security interest in the fidelity bond as a "collateral assignment." Collateral assignment is an accepted practice for certain types of insurance, most notably life insurance. *See* 44 Am.Jur.2d *Insurance* § 790. In the life insurance context, proceeds of a life insurance policy are used as collateral for a loan. The security interest in the life insurance policy is best described as a security interest in the *proceeds* of the policy. In contrast, BNY contends that it has a security interest in the insurance policy itself, and thus a right to file a claim under it. *See, e.g., PPG Indus., Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58, 60–61 (2d Cir.1976). At most, BNY's security interest in the fidelity bond is simply a security interest in any *proceeds* of the fidelity bond. Therefore, the security interest does not confer standing

to bring a claim for losses suffered by parties other than the insured.

Insurance policies are personal contracts between an insured and the insurance company. Here, Travelers, as the sole insured, is the only party who entered into a contract with National Union. There is no evidence that National Union was aware of the Indenture Agreement, and, specifically, of the security interest in the fidelity bond. Given concerns of privity of contract, neither BNY (nor RBC or Urfina) can "step into the shoes" of Travelers by asserting a security interest in the fidelity bond as proof of collateral assignment. As the district court noted, BNY must show that it has a contractual relationship with National Union in order to bring this claim. It has not done so.

■ Third, BNY also relies on Sections 9–601 and 9–609 of the New York UCC,[2] which define the rights of secured parties, to argue that it has standing to sue National Union. Although these statutes grant BNY a right to enforce a security interest, including a right to take possession of the fidelity bond (which, here, necessarily would mean the right to take possession of any proceeds), this does not include a right to bring a cause of action against National Union for breach of the bond.

■ Finally, BNY argues that the foreclosure sale at which RBC and Urfina became the legal owners of the fidelity bond addresses any concerns about the lack of assignment raised by National Union.[3] This argument also fails. At most,

quired to be maintained in effect by [Travelers Acceptance Corporation] for the benefit of [Travelers] ... (collectively, the "Collateral"). Such Grants are made ... to secure ... the Notes...."

**2.** The plaintiffs assert that their rights under the Indenture Agreement are governed by New York law. The defendant does not chal-

lenge this. Regardless, the referenced sections of the New York UCC are identical to those of the California UCC.

**3.** The defendant raises a number of issues concerning the sale of the fidelity bond itself. We do not have to reach the merits of these claims since the sale, whether valid or not,

BNY transferred to RBC a legal right to the proceeds, not the ability to bring a claim under the fidelity bond. BNY cannot transfer more than what it had. Under the terms of the fidelity bond, Travelers still must suffer the loss and file the claim.

The plaintiff fails to provide a compelling basis for this court to find that BNY has standing to bring a claim under the fidelity bond. At best, BNY has a security interest in the proceeds from the fidelity bond. We affirm the district court's grant of summary judgment.

2. The district court did not err in denying the plaintiffs' motion for a new trial.

This court reviews the district court's decision to deny BNY's request for a new trial for abuse of discretion. *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir.2005). Federal Rule of Civil Procedure 59(a) allows for the granting of a new trial upon the existence of "newly discovered" evidence. To prevail on such a motion, the party must establish that, among other things, "the new evidence is of such magnitude that it would likely have changed the outcome of the case." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 998 (9th Cir.2001). The district court concluded that the foreclosure sale would not have changed the outcome because BNY could not confer standing that it lacked to RBC or Urfina. This finding did not constitute an abuse of discretion. We therefore affirm the district court's denial of the plaintiffs' motion for a new trial.

AFFIRMED.

does not change the plaintiffs' inability to bring the present action.