Filed 9/24/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROD E. GIETZEN et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>COVENANT RE<br>MANAGEMENT, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B287339<br>(Super. Ct. No. 56-2012-<br>00413479-CU-CO-VTA)<br>(Ventura County)<br><br>OPINION FOLLOWING<br>REHEARING |

The effect of an uncollected judgment may change through circumstances occurring after judgment. The judgment holder may suffer a loss or in this case gain a benefit.

Once again, we visit the judgment arising from Yolanda's Inc.'s (Yolanda's) action against its landlord. This time the issue is whether a third party beneficiary of a contract has more rights than the promissee. A shopping center lease contains a provision limiting the lessor's liability for breach of the lease to the lessor's interest in the shopping center. Yolanda's, the lessee, obtained a judgment against its lessor, a limited partnership. Yolanda's moved to amend the judgment to add the general partner of the limited partner lessor as a judgment debtor. The trial court

denied the motion on the ground that the general partner is a third party beneficiary of the provision limiting liability.

We reverse. By virtue of a foreclosure, the lease was assigned to the foreclosing lender. The assignment terminated the lessor's rights under the lease. The termination of the lessor's rights also terminated the rights of the third party beneficiary general partner.

FACTS

We continue to chronicle Yolanda's odyssey to collect its judgment. Yolanda's owns and operates restaurants. It entered into a lease with K&G/Seabridge II, LLC (K&G) and Rocklin Covenant Group, LP (Rocklin) to operate a restaurant at the Seabridge Shopping Center in Oxnard. Yolanda's president Rod Gietzen personally guaranteed the lease.

During lease negotiations, K&G and Rocklin failed to inform Yolanda's that they were in negotiations to lease another space in the shopping center to a gym. The gym's customers monopolized the parking spaces in the shopping center's common parking lot, resulting in a loss of business for Yolanda's.

In March 2012, Yolanda's sued K&G, Rocklin, and their agent, Kahl and Goveia Commercial Real Estate (KGCRE), alleging, among other causes of action, fraud and breach of lease. Yolanda's obtained judgment for breach of the lease in the amount of almost $2 million plus attorney fees and costs. On the first appeal, we reversed the judgment against KGCRE because it was not a party to the lease. We otherwise affirmed. (*Gietzen v. Goveia* (March 30, 2016, B255925) [nonpub. opn.].) On remand, the trial court awarded KGCRE almost $500,000 in attorney fees as the prevailing party.

2

Meanwhile, lessors lost their interest in the shopping center through foreclosure. Thereafter, in June 2017, Yolanda's brought the instant motion to amend the judgment to add KGCRE and Covenant Real Estate Management, Inc. (CREM) as judgment debtors. Yolanda's alleged that KGCRE is an alter ego of K&G and that CREM is an alter ego of Rocklin. Yolanda's also alleged that CREM is the general partner of a limited partnership of which Rocklin is a limited partner; thus, CREM is liable for Rocklin's obligations pursuant to Corporations Code section 15904.04, subdivision (a).

KGCRE and CREM denied they are alter egos and asserted they have no liability per article 39 of the lease. Article 39 provides: "The liability of Landlord under this Lease shall be limited to Landlord's interest in the Shopping Center. Tenant agrees to look solely to Landlord's interest in the Shopping Center for the satisfaction of any liability, duty or obligation of Landlord with respect to this Lease, or the relationship of Landlord and Tenant hereunder, and no other assets of Landlord shall be subject to any liability therefor. In no event shall Tenant seek, and Tenant does hereby waive, any recourse against shareholders and/or constituent partners of Landlord and the partners, directors, officers or shareholders thereof, or any of their respective personal assets for such satisfaction."

Yolanda's attached as an exhibit to its moving papers portions of an earlier action it brought in the Orange County Superior Court against K&G, Rocklin, KGCRE, CREM, and others. That action alleged the fraudulent transfer of personal property. The defendants moved for summary judgment because they believed that article 39 limited satisfaction of the judgment

3

to the shopping center assets, and that they no longer had an interest in the shopping center due to their lender's foreclosure.

In response, Yolanda's argued that article 39 is merged into the judgment; that a determination of an Orange County Superior Court on the applicability of article 39 is res judicata; and that the benefit of article 39 was assigned with the lease to Rocklin's lender in foreclosure.

The trial court in the Orange County action denied the motion for summary judgment. The court ruled that the article 39 defense was not available because it had been merged into the original judgment.

*The Ventura Trial Court's Ruling*
*on Yolanda's Motion to Amend the Judgment*

The trial court ruled that KGCRE is the alter ego of K&G. The court declined, however, to add KGCRE as a judgment debtor. Instead, in the exercise of the court's equitable powers, it struck the award of almost $500,000 in attorney fees awarded to KGCRE against Yolanda's. Not surprisingly, Yolanda's does not contest this portion of the trial court's ruling.

The trial court also ruled that CREM was not the alter ego of Rocklin; that article 39 was not merged into the judgment; that the court was not bound by the Orange County Superior Court's decision; and that CREM is a third party beneficiary of article 39; thus, Corporations Code section 15904.04 does not apply. Accordingly, the court denied Yolanda's motion as to CREM.

DISCUSSION

I.

On appeal, Yolanda's accepts the trial court's finding that CREM is not the alter ego of Rocklin. Instead, Yolanda's argues that CREM is liable as the general partner of a limited

4

partnership of which Rocklin is a limited partner. Yolanda's relies on Corporations Code section 15904.04, subdivision (a). That subdivision provides in part, "[A]ll general partners are liable jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law."

CREM counters that article 39 of the lease constitutes an agreement by the claimant not to hold it liable. But Yolanda's contends that article 39 does not apply because it was merged into the judgment; the determination of the Orange County Superior Court is res judicata; and the assignment of the lease terminated CREM's rights in the lease. We agree only that the assignment terminated CREM's rights in the lease.

We did not decide the applicability of article 39 in the appeal of the original underlying judgment. Instead, we expressly reserved the matter for postjudgment proceedings.

## II.

Yolanda's argues that the entire lease was merged into the judgment. Thus, Yolanda's asserts article 39 does not limit enforcement of the judgment to the lessor's interest in the shopping center.

Merger is an aspect of the doctrine of res judicata. (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1510.) "A valid final judgment in favor of the plaintiff merges the claim in the judgment. The cause of action is extinguished and the only remaining right of action is on the judgment." (7 Witkin Cal. Procedure (5th ed. 2008) Judgment § 401, p. 1034.)

Yolanda's relies on cases that state the contract is merged into the judgment. (See *Chelios v. Kaye* (1990) 219 Cal.App.3d

5

75, 80 ["The contract, having merged into the judgment, has no remaining vitality"].)  But the rule would be better stated that the particular cause or causes of action on the contract are merged into the judgment, not the contract itself.  Thus, a judgment favorable to plaintiff does not bar a different cause of action brought by plaintiff on the same contract.  (See *Title Guarantee & Trust Co. v. Monson* (1938) 11 Cal.2d 621, 631 [judgment for possession under trust deed not a bar to subsequent action for rents under same trust deed].)

Here, Yolanda's obtained judgment on causes of action for breach of contract and breach of the covenant of good faith and fair dealing relating to the landlord's duty to provide adequate parking.  Questions concerning whether article 39 limits the enforceability of the judgment were not before the trial court or this court.  We expressly stated in our opinion affirming the judgment that questions relating to article 39 are reserved for postjudgment proceedings.  (*Gietzen v. Goveia, supra,* B255925.)

### III.

Yolanda's contends the trial court erred in refusing to follow the Orange County court's order denying summary judgment.

Yolanda's claims the order is res judicata and that CREM is collaterally estopped from relitigating the issues decided therein.  "The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d

6

903, 910.)  But an order denying summary judgment is not a final judgment.  (See *Salehi v. Surfside III Condominium Assn.* (2011) 200 Cal.App.4th 1146, 1158.)  It is a finding that there is a triable issue which after being adjudicated may result in a final judgment in a party's favor.

Yolanda's argues that for the purposes of issue preclusion, as distinguished from claims preclusion, a final judgment includes any prior adjudication of an issue that is sufficiently firm to be accorded preclusive effect.  (Citing Rest.2d Judgments, § 13.)  Yolanda's cites a number of cases in which prior adjudications not constituting final judgments were determined to be sufficiently *firm* to be given preclusive effect.

But none of the cases involved the denial of a motion for summary judgment. (Citing *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1564 [order sustaining demurrer]; *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 998 [order quashing service of summons for lack of personal jurisdiction]; *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 936 [final judgment dismissed with prejudice pursuant to settlement while case on appeal]; *Security People, Inc. v. Medeco Security Locks, Inc.* (N.D.Cal. 1999) 59 F.Supp.2d 1040, 1045 [grant of motion for summary judgment].)  An order denying summary judgment does not end the case.

IV.

Yolanda's contends the trial court erred in applying the third party beneficiary doctrine to CREM because the lease was assigned in foreclosure.

It is undisputed that all of Rocklin's interest in the shopping center was acquired by Rocklin's lender at a trust deed foreclosure sale.  It is also undisputed that under the terms of the

7

trust deed, Rocklin assigned all of its interest in all leases of the shopping center in the event of default. Thus, Yolanda's lease was assigned to Rocklin's lender.

Upon assignment, all rights in the lease belong to assignee and the assignor's rights are extinguished. (See *McCown v. Spencer* (1970) 8 Cal.App.3d 216, 225.) Yolanda's therefore argues that Rocklin no longer has any rights in the lease. Yolanda's also points out that a third party beneficiary's rights are no greater than those of the promissee. (Citing *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 132.) Yolanda's reasons neither Rocklin nor CREM can assert article 39.

CREM relies on *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1485-1486 (*Principal*). In *Principal*, a law firm leased space in a building on which a lender held a trust deed senior to the lease. The lease contained an attornment clause requiring the lessee upon foreclosure to enter into a new lease with landlord's successor on the same terms as the existing lease. When the lender foreclosed during the lease term, the law firm abandoned the premises, claiming that the foreclosure of a senior lien terminated the lease. The lender sued for breach of lease. The trial court gave judgment in favor of the lender, and the Court of Appeal affirmed.

In affirming, the court stated, "To hold that Principal's foreclosure extinguished the firm's duty to attorn would render that clause meaningless . . . ." (*Principal, supra*, 65 Cal.App.4th 1469 at p. 1483.) The court cited Civil Code section 1559, providing, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties

thereto rescind it." (*Principal*, at p. 1485.)  The court stated that if the contract is terminated for any reason other than rescission, a third party beneficiary may still enforce the agreement.  (*Id*. at p. 1486.)  We agree with *Principal* on its facts.

But *Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869 (*Syufy Enterprises*) reached a different conclusion on different facts.  In *Syufy Enterprises*, the city leased for a 50-year term a large parcel of land to the master lease for a commercial development.  The master lease was amended to provide that the lessee can sublease a portion of the premises to Syufy for the construction and operation of a movie theater.  Syufy built and operated the theater under the sublease.  During the term of the sublease, the master lessee filed for bankruptcy.  The bankruptcy court rejected the trustee's motion to assume the master lease, thus terminating the master lease.  The city brought an unlawful detainer action against Syufy on the ground that the termination of the master lease terminated the sublease on which it depended.  Syufy responded by suing for declaratory relief and damages on the ground that it was a third party beneficiary of the master lease and the master lease was not terminated by rescission.  It argued that, under *Principal*, *supra*, 65 Cal.App.4th 1469, it was entitled to enforce the sublease.  The trial court rejected Syufy's argument and granted the city judgment of nonsuit.

The Court of Appeal affirmed.  The court distinguished *Principal* on the ground that the attornment clause in question there was designed to take effect on foreclosure, and would be meaningless if the tenant's obligation under the clause was extinguished by foreclosure.  (*Syufy Enterprises*, *supra*, 104 Cal.App.4th 869 at p. 888.)  Whereas, in contrast, Syufy

9

identified no clause, attornment or otherwise, designed to take effect on termination of the master lease. (*Ibid.*) In addition, the court identified the "main problem" with Syufy's argument as the rule that a third party beneficiary cannot assert greater rights than those of the promissee under the contract. (*Ibid.*)

*Syufy Enterprises* guides us here. Unlike the attornment clause in *Principal, supra*, 65 Cal.App.4th 1469, article 39 here is not rendered meaningless by the foreclosure. Instead, the benefit of article 39 is now with the foreclosing lender, Rocklin's successor in interest. Nor do we read Civil Code section 1559 as abrogating the rule that a third party beneficiary cannot assert greater rights than those of the promissee. Rocklin lost its right to assert article 39 when the lease was assigned in foreclosure. Because CREM cannot have more rights than Rocklin, CREM also loses its rights. CREM may not have anticipated the foreclosure, but foreclosures do occur.

V.

In a petition for rehearing, CREM raises two issues for the first time.

CREM argues that the foreclosed trust deed is not part of the record in this case. It was a part of the record in the Orange County action. Yolanda's requests that we take judicial notice of the trust deed. We do so. (Evid. Code, § 452, subd. (d)(1).) Moreover, in its letter brief in support of its petition for rehearing, CREM concedes that the foreclosed trust deed contains an assignment clause.

CREM argues that the assignment clause is not alone sufficient to perfect the assignment. CREM relies on Civil Code

10

section 2938, subdivision (c).[1]

Civil Code section 2938, subdivision (c) applies to provisions in trust deeds assigning rents as additional security in the event of default.  (See, e.g., *Federal National Mortgage Assn. v. Bugna* (1997) 57 Cal.App.4th 529, 531.)  The subdivision provides for procedures that allow trust deed beneficiaries to obtain rents prior to foreclosure that would otherwise be paid to the defaulting borrower.  Such procedures include appointment of a receiver or written demand on the assignor and tenants.  The subdivision requires any such rents obtained by the trust deed beneficiary to be applied to the secured debt.

---

[1] Civil Code section 2938, subdivision (c) provides in part: "(c) Upon default of the assignor under the obligation secured by the assignment of leases, rents, issues, and profits, the assignee shall be entitled to enforce the assignment in accordance with this section.  On and after the date the assignee takes one or more of the enforcement steps described in this subdivision, the assignee shall be entitled to collect and receive all rents, issues, and profits that have accrued but remain unpaid and uncollected by the assignor or its agent or for the assignor's benefit on that date, and all rents, issues, and profits that accrue on or after the date.  The assignment shall be enforced by one or more of the following . . . ."  The subdivision provides for enforcement by appointment of a receiver; possession of rents, issues and profits; or written demand on the assignor and tenants.  The subdivision further provides: "Moneys received by the assignee pursuant to this subdivision . . . shall be applied by the assignee to the debt or otherwise in accordance with the assignment or the promissory note, deed of trust, or other instrument evidencing the obligation . . . ."

11

The subdivision does not apply where, as here, the landlord's reversion is transferred in foreclosure along with the lease.  In such a case, the assignee becomes the new landlord.  It would be absurd to apply Civil Code section 2938, subdivision (c) where the lease is assigned in foreclosure.  A landlord is not required to obtain the appointment of a receiver or to give a demand to the foreclosed assignor before the landlord can collect rent from its own tenants.  In addition, the provision in subdivision (c) requiring the rents to be applied to the secured debt is meaningless as applied to the circumstances presented here.  CREM cites no authority requiring any particular formalities to perfect the assignment of a lease.

CREM argues that even after the lease is assigned, contractual obligations continue between it and the assignee.  CREM relies on *Vallely Investments v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816, 822.  There the court held that where a tenant assigns its leasehold interest, it remains liable to the lessor for the performance of the lease covenants based on privity of contract.

CREM's reliance on *Vallely* is misplaced.  CREM fails to distinguish between liabilities and rights.  Yolanda's liabilities are not at issue here.  Instead, CREM is claiming through Rocklin the right to protection under article 39 of the lease.  But Rocklin assigned its interest in the lease by virtue of the foreclosure.  Although the contractual liabilities of Rocklin, the assignor, may remain after assignment, Rocklin's rights are extinguished.  (See *McCown v. Spencer, supra*, 8 Cal.App.3d at p. 225.)

Nevertheless, CREM also argues for the first time in its petition for rehearing that article 39 continues to apply because

12

the judgment preceded the assignment. The judgment was final before the foreclosure and assignment of the lease. But final does not mean dead. The judgment is viable unless satisfied, barred by limitations (Code Civ. Proc., § 683.020), or discharged in bankruptcy. While the judgment remains viable, the judgment creditor's ability to enforce the judgment may be affected by whatever happens, positive or negative, to the judgment debtor, including the assignment of the lease.

The general rule is that an assignment extinguishes the rights of the assignor and its third party beneficiaries. CREM presents no reason why that rule should not apply here. Article 39 and similar lease provisions are in the nature of an exculpatory clause. Such a clause allows a landlord to establish an under-capitalized entity as a nominal landlord. This insulates an actual landlord from liability for harms to its tenants. CREM cites no policy affording such clauses preferential treatment after assignment. Nor can we think of any.

DISPOSITION

The judgment (order) is reversed with instructions to amend the judgment to include CREM as a judgment debtor. Costs are awarded to appellants.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.                    PERREN, J.

13

Kent M. Kellegrew, Judge

Superior Court County of Ventura

_____

Lurie & Seltzer, Barak Lurie, Michele A. Seltzer and Brent A. Kramer for Plaintiffs and Appellants.

Voss, Cook & Thel, Francis T. Donohue; Sheppard, Mullin, Richter & Hampton, Aaron J. Malo and Karin Dougan Vogel for Defendant and Respondent.